IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RICHARD LANARD BONNER, #93764                                    PLAINTIFF

VS.                                      CIVIL ACTION NO. 3:14cv488-FKB

HINDS COUNTY, MISSISSIPPI                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment [40] and a supporting

memorandum filed by Defendant Hinds County, Mississippi ("Hinds County").  Plaintiff has

filed a Response [43] in opposition to the Motion, to which Defendant Hinds County has filed a

Reply [44].  Plaintiff has also filed two additional Responses [46], [47], which Hinds County has

moved to strike [49].  Having considered the filings, the Court finds that the Motion for

Summary Judgment [40] should be granted, and the Motion to Strike [49] should be denied.

Accordingly, Plaintiff's claims against Hinds County are hereby dismissed with prejudice.

I.  Facts and Procedural History

Plaintiff is a former pretrial detainee at the Hinds County Detention Center ("Detention

Center").  According to his complaint, Hinds County violated his constitutional rights while he

was incarcerated as a pre-trial detainee at the Detention Center[1] during 2014.

The Court held an omnibus hearing[2] in this matter, at which time it conferred with

Plaintiff and counsel for Defendant in this suit founded upon 42 U.S.C. § 1983, "which creates a

---

[1]Plaintiff originally named Hinds County Detention Center as a defendant, but the Court
dismissed Plaintiff's claims against that entity and added Hinds County as a defendant after
considering additional filings by Bonner.  *See* Order [9].

[2]*See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

cause of action against any person who violates another's constitutional rights while acting under color of state law." *Estate of Thornton v. Rankin Cnty.*, 2015 WL 1650237, *2 (S.D. Miss. Apr. 14, 2015)(Jordan, J.).  At that hearing, the parties consented to have a United States Magistrate Judge conduct any and all further proceedings in the case and order the entry of final judgment, and the District Judge subsequently entered an order of reference.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Bonner is proceeding in this matter *in forma pauperis* ("IFP") and *pro se*.

As stated above, Bonner alleges that Hinds County violated his constitutional rights during his confinement at the Detention Center. Specifically, Plaintiff claims that Hinds County violated his constitutional rights by failing to protect him from harm when he received injuries during a riot that occurred at the Detention Center on March 31, 2014, and by denying him medical attention for those injuries.  Moreover, Bonner alleges that not only did Hinds County deny him adequate medical care immediately after the riot, but it also delayed providing him adequate medical care subsequently.

In his original Complaint [1] and in his testimony [24] at the omnibus hearing, Bonner alleges that on the afternoon of March 31, 2014, members of rival street gangs housed at the Detention Center instigated a riot.  During the ensuing melee, staff members at the Detention Center were overwhelmed by inmates: some staff members retreated to safety, while others were held hostage. [1] at 9; [40-9].  Inmates gained access to other prison areas and assaulted inmates from opposing street gangs with various homemade weapons and equipment they had stolen from the Detention Center. [1] at 9, [24] at 19.  According to Plaintiff's complaint, one inmate was killed by rival gang members.  *Id.* at 9.  Plaintiff alleges that he and his cell mates remained safely locked in their cell until several inmates used a homemade metal rod to "pop" open the

cell door.  Once inside, one of the attacking inmates, who was unknown prior to that time by Plaintiff, hit Bonner across his left temple and eye with a piece of wood, described by Plaintiff as a "two by four," thereby causing immediate pain.  *Id.* at 4, 10; [24] at 22-23.  A SWAT team eventually quelled the riot.  Bonner alleges that he asked for medical attention at the first opportunity, as his eye and head were hurt, and he suffered pain, dizziness, and swelling. [1] at 11.  However, he alleges that a Detention Center officer told him that his injuries were not severe enough to warrant medical attention because he had not been stabbed and was not bleeding.  *Id.*

Bonner alleges that in the aftermath of the riot, on April 1, 2014, he and other inmates were transported to the Madison County Detention Center.  *Id.*  He alleges that the Madison County Detention Center also denied him medical treatment at that time, even though he complained about his head and eye injuries upon entry to the facility.  *Id.*[3]  Bonner alleges that he was briefly returned to the custody of the Hinds County Detention Center on April 11, 2014, for a court appearance.  *Id.* at 5.  Upon Bonner's return to the Madison County Detention Center on April 11, he alleges that he requested medical attention during "intake," but he does not allege whether he received any medical attention.  *Id.* at 6.  Plaintiff was ultimately returned to the custody of the Hinds County Detention Center on April 16, 2014. [24] at 12.  Bonner alleges that upon re-entry to the Detention Center, he requested medical attention, but officers denied him medical attention at that time. *Id.* at 13.  He asserts that his first opportunity to see a physician was on April 24, 2014, when a doctor examined him at the Detention Center, and

---

[3]Plaintiff has not named the Madison County Detention Center as a defendant in this action.  In his signed "Initial Medical Assessment" at the Madison County Detention Center, Bonner denied having fainted or experienced a head injury, yet he stated that he had recently been hospitalized /under doctor care, that he took the medications of "ibuprofen acid reflux meds high blood pressure," and that he had dislocated his shoulder in Arizona on March 3. [40-4] at 4.

psychiatric doctor treated him for panic attacks and trouble sleeping, from which he had suffered since the riot. [1] at 11; [24] at 14.  According to Bonner, he underwent a CT scan on May 2, 2014, [1] at 11, and he saw an eye doctor for the first time on June 25, 2014. [24] at 15.  At the omnibus hearing, Bonner stated that he had not seen the eye doctor since that time, but that he had continued to receive psychiatric treatment on a regular basis, as well as treatment for his head on one occasion from another doctor at the Detention Center. [24] at 15.  He alleges that he has written grievances "of all sorts" but has never received "any change or compliance." [1] at 13.

## II. Discussion

### A.  Summary Judgment Standard

Hinds County has filed a Motion for Summary Judgment, asserting several bases for dismissal.  Hinds County argues that Bonner has failed to exhaust his administrative remedies as to his denial of medical attention claim, as is required by the Prison Litigation Reform Act ("PLRA"), and, thus, that claim should be dismissed.  Defendant also argues that it is entitled to dismissal on the merits of both of Bonner's claims.  Plaintiff filed a formal response to the Motion for Summary Judgment, as well as other related filings at [46], [47], and [48].

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'"  *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 119

S.Ct. 618 (1998)).  Issues of fact are material if "resolution of the issues might affect the

outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not,

"however, in the absence of any proof, assume the nonmoving [or opposing] party could or

would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994)(en banc)(emphasis omitted).  Moreover, the non-moving party's burden to come forward

with "specific facts showing that there is a genuine issue for trial,*" Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated

assertions," or by only a "scintilla" of evidence.  *Little*, 37 F.3d at 1075.

 In this case, Plaintiff has alleged his claims solely against the entity of Hinds County,

Mississippi.  The liability of a local government under § 1983 must be analyzed under the United

States Supreme Court case of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and

its progeny.  As explained in a similarly postured case,

> [*Monell*] liability under § 1983 may not rest on *respondeat superior* and instead
> must be premised upon "'some official action or imprimatur.'"  Thus, "[*Monell*]
> liability under section 1983 requires proof of three elements: a policymaker; an
> official policy; and a violation of constitutional rights whose 'moving force' is the
> policy or custom."

*Estate of Thornton*, 2015 WL 1650237 at *2 (citations omitted).

 Because liability cannot be predicated on *respondeat superior*, "the unconstitutional

conduct must be directly attributable to the [local government] through some sort of official

action . . .; isolated unconstitutional actions by [its] employees will almost never trigger

liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  *Monell* liability can

be proven if a policy was promulgated with deliberate indifference to the "known or obvious

consequences" that constitutional violations would result. *Id.* at 579.  "In addition to culpability,

there must be a direct causal link between the [local government's] policy and the constitutional

deprivation. *Monell* describes the high threshold of proof by stating that the policy must be the

'moving force' behind the violation." *Id.* at 580 (citing *Monell*, 436 U.S. at 694).   Furthermore,

> [d]eliberate indifference of this sort is a stringent test, and a "showing of simple
> or even heightened negligence will not suffice" to prove [*Monell*] culpability.  It
> follows that each and any policy which allegedly caused constitutional violations
> must be specifically identified by a plaintiff, and it must be determined whether
> each one is facially constitutional or unconstitutional.

*Id.* at 579 (citations omitted).

Moreover, a § 1983 claim of *Monell* liability requires an underlying constitutional

violation.  *Kitchen v. Dallas County*, 759 F.3d 468, 483 (5th Cir. 2014).  Similar to § 1983 cases

brought against individual defendants, "if it becomes evident that the plaintiff has failed to state

or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis."  *Wells*

*v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1995)(citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)).

Thus, if the Court finds that Plaintiff has failed to assert a violation of a constitutional right, it

need not reach the question of *Monell* liability. *See id.; accord, Kitchen*, 759 F.3d at 483; *see*

*also* 28 U.S.C. § 1915(e)(2)(B)(ii)("the court shall dismiss the case at any time if the court

determines that . . . the action or appeal . . . fails to state a claim on which relief may be

granted.").

The Court now turns to address Defendant's arguments for dismissal.

## B.  Exhaustion of Administrative Remedies

Hinds County asserts that Bonner's claims related to medical care should be dismissed

because he has failed to exhaust his administrative remedies as to those claims. Statutory and

case law requires a prisoner to exhaust administrative remedies, regardless of the relief sought.

The relevant portion of 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), states the following:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a)(Supp. 2000).  In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court held that 42 U.S.C. § 1997e, revised as a part of the PLRA, requires an inmate to exhaust administrative remedies before bringing an action with respect to prison conditions, regardless of the relief offered through administrative procedures.  *Booth*, 532 U.S. at 741. The United States Supreme Court further explained that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  *See Porter v. Nussle*, 122 S.Ct. 983 (2002); *see also Jones v. Bock*, 127 S.Ct. 910 (2007)(reaffirming that exhaustion is mandatory; stating that it is an affirmative defense).

The United States Court of Appeals for the Fifth Circuit has reiterated the principles found in these cases.  In *Gonzales v. Seal*, 702 F.3d 785 (5th Cir. 2012), the Fifth Circuit recognized that exhaustion of administrative remedies prior to suit is mandatory, and that district courts have no discretion to stay § 1983 prisoner cases when they are filed before prisoners have exhausted administrative remedies.  The Fifth Circuit concluded, as follows:

> District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.  It is irrelevant whether exhaustion is achieved during the federal proceeding.  Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Id.* at 788.  The Court is mindful, however, that because "exhaustion is an affirmative defense, the burden is on [the movant] to demonstrate that [a prisoner plaintiff] failed to exhaust available

administrative remedies." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

Nevertheless, "[i]t is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion." *Walker v. East Miss. Corr. Facility*, 2013 WL 4833901 (S.D. Miss. Sept. 11, 2013)(citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)(finding that filing an initial grievance, without more, did not equate to exhaustion)); *see also Tompkins v. Holman*, 2013 WL 1305580 (S.D. Miss. Mar. 26, 2013)(dismissing § 1983 complaint for failure to exhaust administrative remedies when prisoner filed a grievance, but did not complete the ARP before filing his lawsuit). Exhaustion is mandatory, "irrespective of the forms of relief sought and offered through administrative avenues." *Booth*, 532 U.S. at 739.

In this case, Bonner does not allege that he suffered from any ailment that prohibited him from pursuing administrative remedies. *See Ferrington v. Louisiana Dep't of Corr.*, 315 F.3d 529 (5th Cir. 2002)(Plaintiff-inmate's blindness did not excuse him from exhausting administrative remedies.); *see also Days v. Johnson*, 322 F.3d 863 (5th Cir. 2003)(excusing non-exhaustion of administrative remedies because of physical injury and subsequent rejection of grievance due to untimeliness).

Hinds County has provided a copy of the grievance procedure at the Detention Center. [40-12] at 56-57. Hinds County has also provided evidence demonstrating, and Bonner admitted at the omnibus hearing, that he was familiar with the grievance procedure at the Detention Center. *See* [24] at 24. Bonner filed one grievance relating to his medical and other claims, but he never pursued the grievance beyond the initial response to the medical claims. [40-2] at 4-5.

Plaintiff has failed to come forward with adequate proof to rebut Defendants' arguments that he failed to exhaust his administrative remedies as to his medical claims. Although Bonner

-8-

alleges that he filed multiple grievances, they are not in the records, and he has failed to present them in response to the Motion for Summary Judgment.  Hinds County has provided copies of his entire jail record, *see* [40-2], and it contains several grievances unrelated to the claims presented in this action.

Unsubstantiated assertions are insufficient to create a real controversy regarding material facts. *See Hopper v. Frank,* 16 F.3d 92, 96–97 (5th Cir. 1994). As the evidence stands, Bonner's unsubstantiated assertions are the only evidence supporting his arguments that he attempted to exhaust and did exhaust his administrative remedies with regard to his medical claims.  This evidence is simply not enough to defeat a motion for summary judgment on this issue.  Accordingly, for these reasons, the Court hereby grants the Hinds County's Motion for Summary Judgment Based on Failure to Exhaust Administrative Remedies relating to his medical claims.

<u>C.  Denial of Adequate Medical Attention Claims</u>

Alternatively, and in an abundance of caution, the Court will examine the merits of Bonner's medical claims.  Bonner alleges that Hinds County denied him adequate medical attention in the immediate aftermath of the riot on March 31, 2014.  Plaintiff also alleges that Hinds County denied him adequate medical attention from the time he returned to the Detention Center on April 16 until he was examined on April 24 by a doctor at the Detention Center.  As discussed above, Plaintiff must first clear the hurdle of alleging a claim of constitutional proportions before the Court will consider the issue of liability under *Monell*.

The standards governing cases in which an inmate or pretrial detainee makes a claim of inadequate medical care are well established.  The Fifth Circuit has adopted the same standard for evaluating the claims of both pretrial detainees and convicted prisoners.  *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996)(*en banc*).  Specifically, such a plaintiff must show

"deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)(citing *Estelle*, 429 U.S. at 105-106). Although he may disagree with the treatment he received, "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Moreover, an allegation of negligence will not support a claim under 42 U.S.C. § 1983. *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995).

> This Court has addressed the issue of delayed medical care, stating
>
> To state a claim for a civil rights violation resulting from delayed medical attention, a plaintiff must demonstrate that the injured party suffered substantial harm resulting from the delay. "In all but the simple and routine cases. . . it is necessary to establish medical causation by expert testimony."

*Campbell v. McMillin*, 83 F. Supp.2d 761, 766 (S.D. Miss. 2000)(J. Barbour).

Having reviewed the filings of record and considered Plaintiff's testimony at the omnibus hearing, the Court finds that Plaintiff's claim of inadequate medical care should be dismissed. As shown below, a review of the medical care given to Plaintiff fails to show a deliberate indifference to any serious medical needs of Plaintiff. Accordingly, Plaintiff has failed to show that his claim of inadequate medical care rises to the level of a constitutional violation.

According to Plaintiff's testimony and filings, he was initially screened for medical injuries by deputies, or other Hinds County officials, on the night of the March 31 riot. He alleges that he told them that he had been hit in the head, and Plaintiff claims that at that time, his head was swollen and that he was still nauseated and dizzy. [24] at 11. Plaintiff alleges that

he was denied medical care at that time because he was not "stabbed or bleeding." *Id.*

That morning, Plaintiff was transported to the Madison County Detention Center.  Upon entry to the Madison County Detention Center on April 1, Bonner responded in the negative to the question, "Have you fainted or experienced a head injury?" [40-4] at 4.  He remained in the custody of the Madison County Detention Center for the next ten (10) days, until officers of Hinds County Detention Center transported him to a court hearing on April 11.[4]  Records show that Bonner returned to the Madison County Detention Center late on the evening of April 11. [40-4] at 12.   Bonner remained at the Madison County Detention Center until April 16, when he was transported to the Hinds County Detention Center. [24] at 12.

Plaintiff alleges that upon re-entry to the Hinds County Detention Center on April 16, he requested medical attention.  *Id.* at 13.  He alleges that he received medical attention on April 24 when his vision was tested. [7] at 2.  Medical records also show that he was examined on April 25 for complaints of left eye pain. [40-3] at 4.  The medical provider's assessment at that time was left eye pain, sinusitis, night terrors, and a history of head trauma, and the medical provider entered unspecified orders for treatment.  *Id.*  Bonner received psychiatric counseling and medications on April 28.  *Id.* at 3; [24] at 13-14.  While in the custody of the Hinds County Detention Center, Bonner underwent a CT scan of the head on May 2, which showed "no acute abnormality." [40-6] at 3.   He alleges that he saw a "real eye doctor" on June 25. [7] at 2.  Medical records of that visit confirm that he was examined by a Dr. Bear, to whom Bonner complained of problems with his vision. [40-6].  Dr. Bear noted that Bonner complained of seeing "squiggly lines," that an "orange light comes and goes away off to the left," and that his

---

[4]Both the medical records and Bonner's filings are silent as to whether he requested medical attention from Hinds County on April 11.

eye made a "squeaking noise" when rubbed. *Id.* It appears that the doctor rated Bonner's "far" vision in both eyes as 20/50, and his "near" vision in both eyes as 20/20. *Id.*[5] During the visit, Dr. Bear ordered an MRI of Bonner's face and neck, which was performed with and without contrast on July 15. [40-6] at 4.[6] The radiologist's diagnostic report states,

> The intraorbital structures, including the eye globes, optic nerves and extraocular muscles, exhibiting normal appearance. No abnormal mass, inflammatory change or foreign body seen within either orbit. There is mild mucosal thickening within the anterior ethmoid air cells. Paranasal sinuses otherwise appear clear. The brain appears normal, with no intracranial mass, hemorrhage or evidence of acute infarct seen. No areas of abnormal enhancement are seen on postcontrast images.

*Id.* The doctor's final impression was "[m]ild changes of ethmoid sinusitis. Otherwise unremarkable MRI of the orbits." *Id.*

At the omnibus hearing, Bonner testified that he continued to receive psychiatric treatment on a regular basis while at the Hinds County Detention Center, and that a doctor treated him and gave him Tylenol for headaches while he was at the facility. [24] at 15. He also alleges that he was given a shot for "pain treatment and the swelling of my head," but Bonner does not state who administered the shot. [46] at 2. Bonner also testified that while at the Hinds County Detention Center, he continued to take his medications prescribed by his "psych doctor." [24] at 14. It is unclear how long Bonner remained in the custody of the Hinds County Detention Center.

By his own admission, and according to the medical records submitted, Plaintiff did receive medical care for his injuries while he was in the custody of the Hinds County Detention

---

[5]At the omnibus hearing, Bonner asserted that his vision was 20/20 in both eyes before the riot. [24] at 10.

[6]Bonner submitted a Hinds County transportation medical record dated the same day as his June 25 appointment in which Dr. Bear indicates that he scheduled a return appointment for Bonner on July 23, 2014. [46-1] at 2.

Center.  *See Banuelos v. McFarland*, 41 F.3d at 235 ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").  Although he may disagree with the treatment he received, "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992).  After Bonner received initial assessment by medical personnel on April 24, medical treatment followed, albeit not at the pace Plaintiff may have preferred.  After returning to the Detention Center on April 16, 2014, he was treated on site by the Detention Center's medical personnel on April 24 and 25; he received psychiatric treatment and medications beginning on April 28; the Detention Center ensured that he received a CT scan on May 2; the Detention Center took him to an eye doctor for treatment on June 25; and the Detention Center ensured that he received a scheduled MRI on July 15.  The CT scan showed "no acute abnormality," [40-6] at 3, and the MRI indicated "[m]ild changes of ethmoid sinusitis," but was an "[o]therwise unremarkable MRI of the orbits." *Id.* at 4.  He admits that he received psychiatric treatment and pain medication on an ongoing basis.  This course of treatment does not demonstrate deliberate indifference to his medical needs.

As to his claim of delay in treatment, Bonner has failed to show a significant delay by Hinds County.  Even if he could show a significant delay by Hinds County, he has not shown that he suffered "substantial harm resulting from [a] delay," and he has failed to put forth expert medical testimony to that effect. *Campbell*, 83 F. Supp. 2d at 766.  The MRI and CT scan, both administered after Plaintiff returned to the custody of the Hinds County Detention Center on April 16, were essentially normal.  Accordingly, his claim for delay of medical care must fail.

Having failed to show a constitutional violation on his inadequate medical care claim, it is axiomatic that Bonner cannot show a Hinds County policy or practice that caused a

constitutional violation as required for *Monell* liability.  But the Court notes that Bonner also failed to identify any such policy or practice on which he bases his claim.

For the reasons addressed above, the Court finds that Hinds County is entitled to summary judgment in its favor on Bonner's inadequate medical care claim.

<u>D.  Failure to Protect Claim</u>

Plaintiff next asserts that Defendant Hinds County failed to protect him from harm when he was attacked by a fellow prisoner during the riot on March 31.  In response to Defendant's Motion for Summary Judgment, Bonner claims that Hinds County is at fault for his injuries because one of its jailers in pod control, Aerial Elverton, failed to follow "proto[col]" during the riot by allowing prisoners out of their cells and into different housing areas of the prison. [43] at 2.  In response to Hinds County's rebuttal, Bonner argues in a "surrebuttal" that its two jailers in pod control were "newly hired and unskilled." [47] at 2.  Thus, it appears that Plaintiff is also asserting an inadequate training claim against Hinds County.

To prevail on his failure to protect claim, Bonner must show that a Hinds County employee "(1) violated his clearly established constitutional rights with subjective deliberate indifference and (2) the violation resulted from a [Hinds County] policy or custom adopted or maintained with objective deliberate indifference." *Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997).  Since "[n]o liability exists under the doctrine of *respondeat superior* in claims brought under 42 U.S.C. § 1983," the actions of a Hinds County employee cannot be imputed to Hinds County.  *Kitchen v. Dallas Cnty, Tex.*, 759 F.3d 468, 476 (5th Cir. 2014). Rather, in order to hold Hinds County liable for the actions of its employees under *Monell*, Bonner "must show that [Hinds County] had adopted a policy, practice, or custom that was the moving force behind the constitutional violation."  *Id.* at 476-477.  The United States Supreme

Court and the Fifth Circuit have made clear that the requirements of *Monell* liability "must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, [*Monell*] liability collapses into respondeat superior liability.'" *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)(quoting *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 415 (1997)).

The subject riot occurred in A-pod, which is comprised of four housing units – A-1, A-2, A-3, and A-4, at the Hinds County Detention Center.  At the time of the riot, Jailer Aerial Elverton was assigned to the pod control room. [40-9] at 1, [43-1] at 1.  Plaintiff Bonner was housed in a cell in A-1. [1] at 4.

The evidence presented shows that during the riot, Jailer Elverton "push[ed] buttons in pod control to let inmates out of their cells, and . . . open[ed] the housing unit door to A-2." [40-9] at 2, [43-1] at 2.  Although initially locked in the pod control room, Elverton eventually "opened the pod control door enough for inmates to gain entry into the area."  *Id.*  After gaining entry into the pod control room, the inmates "were able to open the housing unit door to A-1, and inmates were able to open individual cell doors in A-1."  *Id.*

To support his failure to protect claim, Bonner points to Jailer Elverton's actions of allowing the rioting inmates into A-1.  However, even if Jailer Elverton violated Bonner's constitutional rights with subjective deliberate indifference by her actions, Bonner must further prove that a Hinds County policy, practice, or custom was the "moving force" behind Elverton's violation of his constitutional rights.

Plaintiff has failed to identify any policy, practice, or custom that was the "moving force" behind any constitutional violations by Elverton (or any other Hinds County employee).  In support of its motion for summary judgment, Hinds County produced numerous policies and

procedures for officers to follow in the event of a riot.  *See* [40-12].  Plaintiff fails to show that

any of these policies or procedures are unconstitutional as written or that any of them were the

"moving force' behind any constitutional violation.  In fact, Plaintiff, himself, asserts that

Elverton actually violated Detention Center "proto[col] because at no time are inmates to enter

pod control unless e[s]corted by a certified deputy. . . ." [43] at 2.

      With respect to Plaintiff's inadequate training claim, this Court has stated that

"[e]stablishing a case of municipal liability based on inadequate training is a tall task." *Graham*

*v. Hodge*, 69 F. Supp. 3d 618, 627 (S.D. Miss. 2014)(Starrett, J.). A demonstration of  "[m]ere

negligence or even gross negligence is not enough; 'a plaintiff usually must demonstrate a

pattern of [constitutional] violations and that the inadequacy of the training is obvious and

obviously likely to result in a constitutional violation.'" *Yara v. Perryton Indep. Sch. Dist.*, 560

Fed. Appx. 356, 360 (5th Cir. 2014)(quoting *Estate of Davis v. City of N. Richland Hills*, 406

F.3d 375, 381 (5th Cir. 2005)).  As stated in *Graham*,

> Plaintiff must show the following in order to recover on [his] failure to
> train/supervise allegations: (i) the inadequacy of the training procedures; (ii) the
> deliberate indifference of official policymakers in adopting the training
> procedures; and (iii) that the inadequate training was a moving force behind the
> constitutional violation.

*Graham*, 69 F. Supp. 3d at 627.  Plaintiff's mere assertion that the pod control jailers lacked

training because they were "newly hired and unskilled" is inadequate to create a genuine issue of

material fact for trial as to this claim.  Plaintiff has failed to present any evidence regarding the

"training that was provided, how that training was deficient, or how the deficient training

proximately caused" his injuries.  *Estate of Thornton*, 2015 WL 1650237 at *3.  Furthermore, he

has failed to show that Hinds County was deliberately indifferent in adopting or failing to adopt

any training procedures.

By contrast, Hinds County has provided competent evidence that Elverton and the other jailers on duty that night had undergone training that exceeded the training required by the State of Mississippi for jail officers. [40-10] at 1.  Furthermore, Plaintiff has failed to show that the March 31 riot establishes a "pattern of similar incidents" sufficient to demonstrate deliberate indifference for purposes of failure to train. *See Graham*, 69 F. Supp. 3d at 630; *Estate of Thornton*, 2015 WL 1650237 at *4 ("single-incident liability is difficult to prove under Fifth Circuit standards.").

Plaintiff's mere "unsubstantiated allegations" do not satisfy his burden to come forward with "specific facts showing that there is a genuine issue for trial."  *Little*, 37 F.3d at 1075. Thus, defendant Hinds County is entitled to summary judgment on Bonner's failure to protect claim.

III.  Conclusion

Accordingly, for the reasons explained in this Opinion, the Court finds that the Motion for Summary Judgment [40] filed by Hinds County should be granted.  Bonner's claims are hereby dismissed with prejudice.  A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED, this the 29th day of March, 2016.

    /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE